**NOT FOR PUBLICATION**

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

RAPHAEL TRICE,                  :
                                    Civil Action No. 10-4228 (RMB)
          Petitioner,           :

     v.                         :   **OPINION**

DONNA ZICKEFOOSE, Warden,       :

          Respondent.           :


**APPEARANCES:**

Petitioner pro se              Counsel for Respondent
Raphael Trice                  Mark Christopher Orlowski
F.C.I. Fort Dix                Asst. U.S. Attorney
P.O. Box 2000                  402 East State Street
Fort Dix, NJ 08640             Room 430
                               Trenton, NJ  08608

**BUMB**, District Judge

     Petitioner Raphael Trice, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241[1] and an application for leave to proceed in forma pauperis.  The sole respondent is Warden Donna Zickefoose.

Petitioner is not entitled to relief, the Petition will be denied.

I.   BACKGROUND

A.   The Second Chance Act

Pre-release Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008.  In essence, the Act extends the maximum amount of time that the Bureau of Prisons may place an inmate in an RRC to twelve months.

The Second Chance Act provides, in pertinent part:

(1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

>(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
>...
>
>(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
>...
>
>(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
>>(A) conducted in a manner consistent with section 3621(b) of this title;
>>
>>(B) determined on an individual basis; and
>>
>>(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

As noted in the statute, the BOP was directed to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement determinations would be conducted consistently with 18 U.S.C. § 3621(b), that the determinations would be individualized, and that the duration of placements would be sufficient.  Section 3621(b) provides:

>(b)  Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any

> available penal or correctional facility that
> meets minimum standards of health and habitability
> established by the Bureau, whether maintained by
> the Federal Government or otherwise and whether
> within or without the judicial district in which
> the person was convicted, that the Bureau
> determines to be appropriate and suitable,
> considering-
>
> (1)  the resources of the facility contemplated;
> (2)  the nature ad circumstances of the offense;
> (3)  the history and characteristics of the
>      prisoner;
> (4)  any statement by the court that imposed the
>      sentence - (A) concerning the purposes for
>      which the sentence to imprisonment was
>      determined to be warranted; or (B)
>      recommending a type of penal or correctional
>      facility as appropriate; and
> (5)  any pertinent policy statement issued by the
>      Sentencing Commission pursuant to Section
>      994(a)(2) title 28 ... .
>
> ... Any order, recommendation, or request by a
> sentencing court that a convicted person serve a
> term of imprisonment in a community corrections
> facility shall have no binding effect on the
> authority of the Bureau under this section to
> determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the Second Chance Act. The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must

4

be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F.Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' placement decisions to RRCs or home detention.  See 28 C.F.R. §§ 570.20-570.22.  The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.[2]

---

[2] Title 28 of the Code of Federal Regulations, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which provides:

> (a) Community confinement.  Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve

---

months.

(b) Home detention.  Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.

(c) Exceeding time-frames.  These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

B.  <u>Petitioner's Claims</u>

Petitioner alleges that on November 25, 2009, his unit team convened for an RRC review.  Petitioner alleges that he requested a long placement, because he had no place to reside, had no employment prospects established, and had little support from family and friends.  Petitioner alleges that the unit team decided to recommend an RRC placement of 150 days.

Petitioner alleges that, when he argued for a longer placement, the unit team told him that if he challenged the recommendation they would recommend 90 days of RRC placement, because "I will have to answer paperwork, and I hate answering paperwork."  Petitioner alleges that he nevertheless initiated a grievance.[3]  Petitioner also alleges that the Respondent refused requests to schedule an attorney phone call with respect to Petitioner's challenge to the RRC recommendation and that the Respondent "made attempts to transfer" Petitioner because of the grievance.

Here, Petitioner contends that the Bureau of Prisons abused its discretion by limiting his RRC placement to six months or less.  In addition, Petitioner alleges that the BOP retaliated against him for pursuing administrative remedies challenging his RRC placement.

---

[3] Petitioner has exhausted the BOP administrative review process.

Respondent has answered and this matter is now ready for decision.

## II.   ANALYSIS

Petitioner is currently confined pursuant to a sentence of 30 months' imprisonment for Assault with a Deadly Weapon, imposed by the Superior Court of the District of Columbia on March 3, 2005;[4] assuming he receives all good conduct time available, his projected release date is May 24, 2011.

Prior to Petitioner's November Program Review, Case Manager Bibin Jose reviewed Petitioner's Central File, including information regarding Petitioner's criminal history, financial information, education, work history, and institutional performance.  On November 25, 2009, Petitioner's Unit Team conducted a Program Review at which Petitioner's RRC placement was discussed, among other things.[5]  That same date, the Unit

---

[4] Prior to the present sentence, on November 22, 1993, Petitioner was sentenced in the Superior Court of the District of Columbia to a 15-year term of imprisonment for Assault with Intent to Rob While Armed, and Possession of a Firearm During a Crime of Violence, in violation of D.C. Code 22-501, 3202(A)(1) and 3204(B).  On July 13, 200, Petitioner was paroled from this sentence.  On October 12, 2004, Petitioner returned to custody as a parole violator and received a sentence of 2,679 days (7 years and 4 months).  Petitioner was paroled from that sentence on April 29, 2009, following which he commenced the present sentence.

[5] On the same date, the Inmate Skills Development Plan was reviewed and updated.

Team completed a Residential Re-Entry Center Consideration form, as follows:

> Pursuant to the "Second Chance Act of 2007", the unit team is reviewing the above referenced inmate on an individual basis for Residential Re-entry Center (RRC) placement.  The following criteria was considered when making the RRC recommendation:
>
> 1. The resources of the facility contemplated;
> 2. The nature and circumstances of the offense;
> 3. The history and characteristics of the prisoner;
> 4. Any statement of the court that imposed the sentence;
> (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (b) recommending a type of penal or correctional facility as appropriate; and
> 5. Any pertinent policy statement issued by the U.S. Sentencing Commission.
>
> As a component of the above factors, Unit Team has considered the inmate's need for services, public safety and the necessity of the Bureau to manage its inmate population, as outlined in Program Statement 7310.04, <u>Community Corrections Center Utilization and Transfer Procedure.</u>
>
> As a result of the Unit Team's review of the aforementioned criteria we recommend a RRC placement of: <u>90-120 days</u>.  This placement recommendation is of sufficient duration to provide the greatest likelihood of successful reintegration into the community.
>
> Comments:  <u>The Unit Team determined that 90-120 days in (RRC) placement would be sufficient to meet your pre-release needs.  This recommendation was based on your individual expressed needs, employment prospects, adherence to program recommendations and established release residence with your aunt in Washington, D.C.  The Unit Team also considered your prior release violations, history of violence and instant offense conduct.  In making your recommendation the Unit Team expressed concerns about the bed space availability in your release area and the community based resources may not support a length RRC placement.  The Unit Team stated it would enquire of the regional Community</u>

> <u>Corrections Management (CCM) office regarding the bed space considerations.  In considering all relevant factors the Unit Team feels 90-120 days RRC placement in the restrictive component is adequate to serve your release needs.  In light of your resources, criminal history and public safety considerations, the RRC recommendation is deemed appropriate for your needs and in accordance with the 2nd Chance Act of 2007.</u>

(Residential Re-Entry Center Consideration form, Nov. 25, 2009.) Sometime after this Program Review Meeting, a member of Unit Team did contact the Baltimore area Community Corrections Management Office and was informed that bed space continues to be a problem and that RRC placement recommendations should include consideration of this fact.

Petitioner submitted his Request for Administrative Remedy form on January 7, 2010, asserting the same claims asserted here. The Warden denied the request, as follows:

> This is in response to your Request for Administrative Remedy, in which you allege staff did not follow the guidelines of the Second Chance Act.  You claim staff did not consider your individual Residential Re-entry Center (RRC) placement needs.  You also claim staff are obstructing the administrative remedy process.
>
> A review of  your case reveals you are serving a 30-month sentence for Assault with Intention to Rob while Armed and Possession of a Firearm During a Crime of Violence.  You have a projected release date of May 24, 2011, via Good Conduct Time Release.  Residential Reentry Center (RRC) placement is considered based on the following criteria:
>
> 1)   The resources of the facility contemplated;
> 2)   The nature and circumstances of the offense;
> 3)   The history and characteristics of the prisoner;
> 4)   Any statement of the court that imposed the sentence;

>                (a) concerning the purposes for which the sentence
>                to imprisonment was determined to be warranted; or
>                (b) recommending a type of penal or correctional
>                facility as appropriate; and
>        5)      Any pertinent policy statement issued by the U.S.
>                Sentence Commission.
>
>    In addition, recommendations for RRC placement are
>    based on assessments of an inmate's need for services,
>    public safety and the necessity of the Bureau to manage
>    its inmate population responsibly.  The Bureau will
>    ensure the decision for RRC placement will be of
>    sufficient duration to provide the greatest likelihood
>    of successful reintegration into the community.
>
>    In your particular case, the Unit Team considered you
>    for halfway house placement on November 25, 2009.  It
>    was determine that 90-120 days RRC placement would meet
>    your pre-release needs.  You were also advised that
>    your Unit Team would inquire into a 150 day placement
>    if bed space is available in your release.  This
>    recommendation was based on your employment prospects,
>    adherence to program recommendations, and your
>    established release residence with your aunt in
>    Washington, D.C.  The Unit Team also considered your
>    prior release violations, history of violence and
>    current offense conduct.
>
>    Although you do not have employment established, you
>    possess employable skills based on your institutional
>    and prior work history.  The Unit Team encourages
>    utilization of the Employment Resource Center during
>    your incarceration to assist in seeking a potential
>    career path and/or employment prospects.
>
>    The Unit team's recommendation of 90-120 days RRC
>    placement will provide you with the greatest
>    opportunity of a successful transition back into the
>    community.  Further, there is no evidence to support
>    your claim that staff have obstructed your access to
>    the administrative remedy process.  Accordingly, your
>    request has been denied.
>
>    ...

(Remedy No. 573048-F1, Warden's Response, Feb. 5,2010.)

The Regional Director denied Petitioner's appeal on substantially similar grounds.

> Placement in an RRC is designed to provide transition for inmates reintegrating into society near the end of their sentences. Pursuant to Program Statement 7310.04, CCC Utilization and Transfer Procedures, when evaluating an inmate for RRC placement, a number of factors are weighed in determining a recommendation for placement. Determinations are based on the individual's needs, existing community resources, institutional adjustment, length of sentence, and the need to provide for the safety and security of the general public. Inmates are also considered under the SCA, which looks at the resources of the facility, nature and circumstances of the offense, history and characteristics of the inmate, statement of the court imposing the sentence and any pertinent policy statement by the U.S. Sentencing Commission.
>
> A review of your appeal reveals you are serving a 2,679-day term with a May 24, 2011, projected release date. As indicated by the Warden, your Unit Team considered your individual situation and transitional needs pursuant to the above criteria. Based on this review, your were recommended for a 90-120 day RRC placement. This period was determined to be sufficient to provide you with the greatest likelihood of successful reintegration into the community. Staff are afforded broad discretion in reaching this decision and you present no evidence this discretion was abused. Your allegation staff threatened to recommend a lesser RRC period if you accessed the administrative remedy program is not supported by any credible evidence. Accordingly, your appeal is denied.
>
> ...

(Appeal No. 573048-R2, Regional Director's Response, May 7, 2010.)

The administrative record, including Petitioner's criminal history, the Unit Team's consideration of Petitioner for RRC placement, as well as the administrative remedy requests and

responses, reveal that the Unit Team and the subsequent reviewers properly applied the statutory factors in making the pre-release RRC placement decision.  The Unit Team, and the subsequent reviewers, considered Petitioner's history of violent offenses, including an offense during his prior parole, his educational progress while in confinement, his planned residence with his aunt, the employment resources available in the prison, and the limitations on bed space in the community corrections facilities in Petitioner's release area.  Moreover, there is no evidence of any retaliation in connection with Petitioner's employment of the Administrative Remedy Program.

Petitioner's reliance upon Strong v. Schultz, 599 F.Supp.2d 556 (D.N.J. 2009), is misplaced.  In Strong v. Schultz, the petitioner Douglas Strong's RRC placement decision was made on October 2, 2008.  Thus, the decision was made subsequent to the April 14, 2008, memo, but prior to the October 21, 2008, enactment of the regulations by the BOP.  In Strong, this Court held that the April 14, 2008, Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the

13

community, contrary to § 3624(c)(6)(C)."[6]  <u>Strong</u>, 599 F.Supp.2d at 563.  Thus, as to Mr. Strong, this Court held:

> Accordingly, because the duration of Strong's [RRC] placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months.  This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a [RRC], in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.

<u>Id.</u> at 563.

In this case, however, Petitioner's placement decision was made after the effective date of the interim rule.  Nothing in the facts of this matter suggests that the Unit Team felt constrained by the April 14, 2008, memorandum.  To the contrary, Case Manager Jose has submitted an affidavit that he was aware that Petitioner was eligible for up to 12 months of RRC placement and that the recommendation was made with that eligibility in mind, based upon the application of the statutory factors to Petitioner's individual circumstances.

The Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence."  See, <u>Lovett v. Hogsten</u>, 2009 WL 5851205 (6th Cir. Dec. 29, 2009) (unpubl.); <u>see also</u> <u>Travers v. Federal</u>

---

[6] Prior to 2006, the BOP referred to halfway houses as "Community Corrections Centers," or "CCCs."  Today, halfway houses are more commonly known as RRCs.

Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) (Hillman, Jr.) (finding that "... nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved. These pre-release placement decisions are committed by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010) (holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)). Unlike the situation in Strong, here there is no evidence that the Unit Team felt constrained by the April 14 memorandum. To the contrary, here, the evidence compels a finding that the recommendation applicable to Petitioner was based upon an individualized consideration, taking into account all the applicable statutory factors.

Finally, nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 90-120 days already approved. Those pre-release placement decisions are

15

committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.

Thus, based on the foregoing, this Court finds that the BOP complied with the Second Chance Act and Petitioner has not demonstrated that he "is in custody in violation of the Constitution or law or treaties of the United States ...," as required for relief under 28 U.S.C. § 2241.

## IV. CONCLUSION

For the reasons set forth above, the Petition will be denied. An appropriate order follows.

s/Renée Marie Bumb
Renée Marie Bumb
United States District Judge

Dated: January 14, 2011

16